Board of Equalization — Estimates — Basis — Adjustment A majority vote of the Board of Equalization can descend any action of the Board so long as the action has not been formalized, filed as required by law, or acted upon by those lawfully entitled to so act. The Board is required to make an adjustment estimate of the revenues which are accrued by reason of new statutes. Funds presently in the State Treasury as a result of new acts may not be used in making the estimate for the next fiscal year. Funds already accrued can be appropriated by the Legislature without action by the Board of Equalization. The Board can only estimate the expected revenue for twelve months of the fiscal year ending June 30. The Attorney General acknowledges receipt of a letter from the Honorable Dewey F. Bartlett, Governor of the State of Oklahoma, and another letter signed by the Honorable John M. Rogers, State Examiner and Inspector; the Honorable Leo Winters, State Treasurer; the Honorable John Rogers, Secretary of State; and the Honorable Joe Bailey Cobb, State Auditor, asking substantially the same questions. Since the above public officers of Oklahoma constitute five out of the seven members of the State Board of Equalization, a clear majority thereof, we have taken the liberty of addressing our opinion to such Board on the assumption that had such officers been in a meeting of the Board they would have voted to ask for the opinion as a Board. Question one was asked only by the Governor for the reason set out in the narrative facts below: The State Board of Equalization met April 24, 1968, with all seven (7) members present to adjust the estimate for the fiscal year ending June 30, 1969, made by said Board on December 1, 1967. This duty was occasioned by an amendment to Article X, Section 23
Oklahoma Constitution, enacted April 16, 1968, when State Question No. 453, Referendum Petition No. 166, was adopted by the people of Oklahoma. The Board, on April 24, 1968, adjusted the December 1, 1967, estimate in accordance with the amendment to the Constitution but no formal written resolution was at that time adopted and signed by the members of the Board and the estimate was not filed with the Governor, the President of the Senate and the Speaker of the House of Representatives. No action was taken by the Board at this meeting in regard to any cash surplus in the State Treasury to the credit of the General Revenue and Special Funds not previously appropriated by the Legislature; nor was any action taken to estimate the revenues which would accrue under the new revenue raising measures enacted by the Legislature from the effective date of such acts to June 30, 1968. The Board was called back into session at 1:30 p.m. April 25, 1968, for the reason that it was felt the Board has not completed its work. At this meeting six (6) members were in attendance; the State Treasurer, the Honorable Leo Winters, having been called out of town. After much discussion, the State Auditor, the Honorable Joe Bailey Cobb, moved to rescind the action of the Board of April 24, 1968, and at the same time moved to request an opinion of the Attorney General as to whether or not the Board could rescind its action of April 24, 1968. Such motion was seconded and approved unanimously. Therefore, for the Board, the Governor asked the following question: 1. May the State Board of Equalization rescind determinations made by it at a previous meeting when said board action had not been formalized in writing, signed by the members and filed with those entitled to receive copies and when no action had been taken thereon by those entitled lawfully to act. 68 O.S. 2463 [68-2463] (1967), after providing for the membership of the State Board of Equalization, the Governor as chairman and the State Auditor as secretary, provides in relevant part: ". . . provided, that any official action by said Board shall require approval by a majority of all members of the Board. . . ." It is the opinion of the Attorney General that the answer to your first question should be in the affirmative. There appears to be no question a majority of the Board can rescind any action of the Board so long as the action has not been formalized, filed as required by law or acted upon by those lawfully entitled to so act. While the facts may vary in any situation, those related by you would tend to indicate no final action was taken by the Board on April 24, 1968. The "estimate" was not reduced to writing, signed by members of the Board or filed. If no action was taken, there would be nothing to rescind. On the other hand, from the facts related, could it be that the action of the Board on April 24, 1968, was entirely correct regarding the estimate for the fiscal year ending June 30, 1969; that the Board just did not finish its work by taking some action on the revenue which has accrued or which will accrue before the end of the fiscal year under new revenue raising measures adopted by the Legislature? If the estimate for the fiscal year ending June 30, 1969, as approved April 24, 1968, is correct, then the Board should now proceed to take action to complete its work, necessitated by the enactment of H.B. No. 535, S.L. 1967, Ch 258, p. 408, and H.B. No. 1032, enacted by the Second Session (1968) of the 31st Oklahoma Legislature. The following further facts were set out in the Governor's request: It appears that of the revenue raising measures enacted by the Legislature in the first and second sessions of the 31st Oklahoma Legislature only two have become effective since the last meeting of the State Board of Equalization, December 1, 1967, H.B. 535, S.L. 1967, Ch 258, p. 408, and H.B. No. 1032 enacted by the Second Session (1968) of the 31st Oklahoma Legislature and no others will become effective before June 30, 1968. From the effective date of these two acts to this date more than one million dollars ($1,000,000) has accrued in the State Treasury in the Depository Account of the Oklahoma Tax Commission only a part of which has been placed to the credit of the funds to which such accruals will ultimately go. In connection with these further facts the following questions were asked by the Governor and substantially the same questions were asked by the other named state officers: 2. May the State Board of Equalization lawfully estimate, as a basis for appropriations by the 2nd Session (1968) of the 31st Oklahoma Legislature for the next succeeding fiscal year, under the provisions of Article X, Section 23 Oklahoma Constitution, as amended April 16, 1968, the revenue expected to accrue for the fiscal year ending June 30, 1969, under the following acts of the Legislature; House Bill No. 535, of the 1967 Session; House Bills numbered 1032 and 805; Senate Bills numbered 625, 711, 454, 291 and 453, of the 1968 Session? 3. May funds now in the State Treasury as a result of any of the above acts be used in making the estimate for the fiscal year ending June 30, 1969? 4. If your answer to the third question be in the negative, may funds now in the State Treasury as a result of any of the above acts be used to adjust the estimate heretofore made for the fiscal year ending June 30, 1968, and thus allow the Legislature to appropriate the same for immediate expenditure as income for the fiscal year ending June 30, 1968? 5. May the Board make an estimate of revenues that will accrue under any or all of the above acts from this date to June 30, 1968, and use this estimate as part of the estimate for the fiscal year ending June 30, 1969? 6. May the Board make an estimate of revenues that will accrue under any or all of the above acts from this date to June 30, 1968, and thus arrive at an adjusted estimate for 1968, which will allow the Legislature to appropriate the same for the fiscal year ending June 30, 1968? The pertinent part of Section 23, Article X, Oklahoma Constitution, as amended April 16, 1968, is as follows: "Within twenty-one days after the adopting of this amendment and thereafter prior to the convening of each regular session of the Legislature, the State Board of Equalization shall make an itemized estimate of the revenues to be received by the State under the laws in effect at the time such estimate is made, for the next ensuing fiscal year showing separately the revenues to accrue to the credit of the General Revenue Fund and each special fund of the State, and the total amount of such estimate for such fiscal year shall not exceed the total revenue which accrued to each such fund for the last preceding fiscal year, to which amount shall be added the cash surplus, . . . and all appropriations made in excess of such estimate shall be null and void; provided, however, that the Legislature may at any regular session or special session called for that purpose, enact laws to provide for additional revenues, other than ad-valorem taxes, or transferring the existing revenues or surpluses from one fund to another, whereupon it shall be the duty of the State Board of Equalization to make an estimate of the revenues that will accrue under such laws and to file the same with the Governor and with the President of the Senate and the Speaker of the House of Representatives, and the amount of any increase or decrease, resulting, for any reason, from such laws shall be added to or deducted from each respective fund, as the case may be. The amount of such adjusted estimate shall be the maximum amount which can be appropriated for all purposes from any fund for the fiscal year estimated." In the case of Draper v. State Board of Equalization, Okl.,414 P.2d 276 (1966), the court said in the first and second paragraphs of the syllabus: "The method for the State Board of Equalization to employ in making its Pre-legislative Session estimate of the revenues to be received by the State during each year of the next biennium, as provided in Article X, Section 23 Oklahoma Constitution, is exclusive, . . . . "Where, after the State Board of Equalization has prepared an estimate prior to the convening of the Legislature, the Legislature enacts laws to provide additional revenues, the Board is required to make an adjusted estimate of the revenues that will accrue by reason of such new enactments. Article X, Section 23 Oklahoma Constitution." And in the body of the opinion the court said: "It is noticed that the `estimate' to be made by the Board prior to the convening of the Legislature is clear and explicit. The Pre-legislative Session `estimate' is not really an estimate but is a formula by which the revenues to be received during the next biennium may be reduced to a mathematical certainty." It is the opinion of the Attorney General that your questions be answered as follows: Your question two should be answered in the affirmative. The plain provisions of Section 23, Article X, Oklahoma Constitution, quoted above, and paragraph two from Draper, above, leaves no doubt that when the Legislature enacts new laws to provide additional revenues to the State, the Board is required to make an adjusted estimate of the revenues which will accrue by reason of the new statutes. Your question three should be answered in the negative. The funds now in the State Treasury as a result of House Bill No. 535, First (1967) Session, 31st Oklahoma Legislature and House Bill No. 1032, Second (1968) Session, 31st Oklahoma Legislature, cannot be used in making the estimate for the fiscal year ending June 30, 1969. Your fourth question should be answered in the affirmative. These funds already accrued, could probably be appropriated by the Legislature without action by the State Board of Equalization because of the final sentence of Article X, Section 23a Oklahoma Constitution, as follows: ". . . any surplus monies thereafter to the credit of the State General Revenue Fund shall be subject to appropriation by the Legislature." And in Draper, supra, at page 280, the court said: ". . . we know of no reason why the Legislature may not have the assistance of the Board in determining the amount of any actual surplus at any suggested date during the current biennium . . . ." Your question number five is answered in the negative. The Board can only estimate the expected revenue for the twelve months of the fiscal year ending June 30, 1969, from any of the revenue measures set out in question one and use this as a basis for appropriations for fiscal year 1969 by the 1968 Legislature. We feel the sixth question should be answered in the affirmative. The Board may make an estimate of revenues that will accrue from this date to June 30, 1968, and adjust the estimate for fiscal year 1968. The amount of increase resulting from any of the laws set out in question one shall be added to each respective fund. The amount of this adjusted estimate above the estimate made for such fiscal year 1968 can be appropriated by the Legislature in 1968, or the part which is not appropriated becomes a surplus at midnight, June 30, 1968. If such estimate of funds which will accrue from this date to June 30, 1968, or any part thereof, is appropriated, the same will be allocated and allotted for the designated purpose as such funds accumulate in the State Treasury. (W. J. Monroe)